EDMUND G. BROWN JR.
Attorney General of the State of California
KRISTIN G. HOGUE
Supervising Deputy Attorney General
DAVID F. TAGLIENTI, State Bar No. 131622
Deputy Attorney General
 110 West A Street, Suite 1100
 San Diego, CA 92101
 P.O. Box 85266
 San Diego, CA 92186-5266
 Telephone: (619) 645-2015
 Fax: (619) 645-2012
 Email: David.Taglienti@doj.ca.gov

Attorneys for Defendants N. Barreras, M.D., and
D. Kahtri, M.D.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THEODORE E. NEWBERRY,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>N. BARRERAS, M.D., D. KAHTRI, M.D., et al.,<br><br>　　　　　　　　　　　Defendants. | Case No.: 08cv0552 L (PCL)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6)<br><br>Date:   August 22, 2008<br>Time:   1:00 p.m.<br>Judge:  Peter C. Lewis, United States<br>　　　　Magistrate Judge |

INTRODUCTION

In this civil rights action under 42 U.S.C. § 1983, Plaintiff, a state inmate proceeding *pro se,* alleges a claim for deliberate indifference under the Eighth Amendment against Defendants N. Barreras, M.D., and D. Kahtri, M.D., employees of the California Department of Corrections and Rehabilitation (CDCR), stemming from inadequate medical care Plaintiff allegedly received for kidney stones and other kidney related problems in or about 2006-2007, at Centinela State Prison.

///

///

1    As set forth below, because Plaintiff has not alleged facts demonstrating that the
Defendants acted with deliberate indifference to his serious medical needs within the meaning of
the Eighth Amendment, the motion should be granted and the action dismissed with prejudice as
to these moving Defendants.

## STATEMENT OF FACTS

While incarcerated at Mule Creek State Prison sometime between 2003 and 2005, Plaintiff complained of "severe side, lower stomach and/or lower back pain, urinary track (sic) infections . . . and blood in his urine." (Compl. ¶¶ 4-5.) Medical personnel at and outside the prison determined Plaintiff had kidney stone related problems, and the kidney stones were scheduled to be removed. (Compl. ¶ 6.) On February 11, 2005, before the procedure to remove the kidney stones could be performed, Plaintiff was transferred to Centinela State Prison (Centinela). (Compl. ¶ 7.) Following his transfer to Centinela, Plaintiff continued to complain about severe side and lower stomach and back pain, as well as blood in his urine, and received treatment from various CDCR physicians for his complaints. (Compl. ¶¶ 8-13.) During a visit with Dr. Esperanza, a CDCR physician at Centinela, on February 28, 2006, Plaintiff was advised that X-rays revealed he had two kidney stones: one suspected to be in his right kidney; the other suspected to be in his urinary tract, between his right kidney and his bladder. (Compl. ¶ 14.) Thereafter, on April 4, 2006, Plaintiff was sent to the Central Treatment Center at Centinela, where he was seen for the first time by Defendant Dr. Kahtri, Centinela's Chief Physician. As a result of his examination, Dr. Kahtri ordered an appointment with an outside doctor for an intravenous pyelogram (IVP)/urogram to confirm the location of the stones, and also wrote an order for an appointment for a "lithrotripsy, the removal of the stones, if warranted." (Compl. ¶ 16.) On May 17, 2006, Dr. Kahtri called the outside urologist's office for an appointment for Plaintiff to have the IVP/urogram performed and an appointment was scheduled for June 23, 2006. (Compl. ¶ 20.) On May 26, 2006, the appointment was canceled, and Dr. Kahtri ordered a CT of Plaintiff's abdomen and additional blood tests. (Compl. ¶ 20.) Thereafter, on June 5, 2006, Dr. Kahtri received and reviewed the results of the tests he had ordered on May 5, 2006, revealing that Plaintiff had abnormal kidney function. (Compl. ¶ 21.) Based on Dr. Kahtri's

1  May 7, 2006, orders, arrangements were made for Plaintiff to again be seen at Pioneer Hospital,
2  in Brawley.  (Compl. ¶ 22.)  On or about June 23, 2006, about three weeks later, Dr. Kahtri
3  reviewed the IVP and pyelogram performed on June 12, 2006, which confirmed Plaintiff had
4  stones in his right kidney and right pelvic area.  (Compl. ¶ 25.)  Dr. Kahtri also ordered a
5  "retrograde" study in or about June 2006, which showed a "normal anterior and posterior
6  urethra."  (Compl. ¶ 29.)  Plaintiff thereafter continued to experience pain from kidney stones
7  and kidney related problems and received treatment for his symptoms through 2007.  Dr. Kahtri,
8  however, was not involved in the delivery of Plaintiff's medical care after June 2006.  (*See*
9  Compl. ¶¶ 26-38.)

## ARGUMENT

### A.   STANDARD ON MOTION TO DISMISS

12  In ruling on a motion to dismiss under Federal Rule of Civil Procedure, rule
13  12(b), the court accepts as true the facts alleged in the complaint.  *Shah v. County of Los*
14  *Angeles*, 797 F.2d 743, 745 (9th Cir. 1986).  While allegations of material fact in the complaint
15  are taken as true and construed in the light most favorable to party opposing the motion,
16  conclusory allegations of law and unwarranted inferences are insufficient to overcome a motion
17  to dismiss.  *Associated General Contractors of America v. Metropolitan Water Dist. of Southern*
18  *California*, 159 F.3d 1178, 1181 (9th Cir. 1998).  Dismissal is appropriate where there is either a
19  "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable
20  legal theory."  *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).
21  Furthermore, when, as here, the plaintiff is proceeding *pro se*, the court must construe the
22  pleadings liberally and afford the plaintiff the benefit of the doubt.  *Karim-Panahi v. Los Angeles*
23  *Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).  The court may not, however, "supply essential
24  elements of the claim that were not initially pled" in giving the complaint a liberal interpretation.
25  *Ivey v. Bd. of Regents of the univ. of Ala*, 673 F.2d 266, 268 (9th Cir. 1982).
26  ///
27  ///
28  ///

B. THE MERITS

PLAINTIFF'S EIGHTH AMENDMENT CLAIM SHOULD BE DISMISSED BECAUSE NEITHER DEFENDANT ACTED WITH DELIBERATE INDIFFERENCE TO PLAINTIFF'S SERIOUS MEDICAL NEEDS ON THE FACTS ALLEGED

To prove a violation of the proscription against cruel and unusual punishment under the Eighth Amendment to the United States Constitution, an inmate must demonstrate that the defendants acted with a deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.* at 106. To establish deliberate indifference, "an inmate must allege sufficient facts to indicate that prison officials acted with a culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 302 (1991). The defendant must purposefully ignore or fail to respond to a prisoner's pain or medical need. *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled on other grounds, *WMX Technologies., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A plaintiff must show that the prison official was aware of facts from which an inference of substantial risk of serious harm could be drawn and that the official actually drew the inference but failed to act. *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). Mere inadequate treatment due to malpractice, or even gross negligence, does not amount to a constitutional violation. *Estelle*, 429 U.S. at 106; *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). Neither does a difference of medical opinion between the inmate and prison medical authorities regarding a diagnosis and/or treatment give rise to a claim for deliberate indifference. *Franklin v. State of Or., State Welfare Division*, 662 F.2d 1337, 1344 (9th Cir. 1981); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). The constitution simply does not require that prisoners be given every medical treatment they desire. *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977); *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). Nor does the constitution grant an inmate an independent constitutional right to outside medical care additional and supplemental to the care provided by prison medical staff. *See Roberts v. Spalding*, 783 F.2d 867, 870 (9th Cir. 1986). Furthermore, while deliberate indifference may appear when prison officials deny, delay or intentionally

interfere with medical treatment, *Hutchinson v. U.S.*, 838 F.2d 390, 394 (9th Cir. 1988), where the claim alleges a delay in treatment, the inmate must demonstrate that the delay was harmful. *Wood*, 900 F.2d at 1335; *see also Randall v. Wyrick*, 642 F.2d 304, 308 (8th Cir. 1981); *Estelle*, 429 U.S. at 107; *cf. Shapley v. Nevada Bd. of State Prison Com'rs*, 766 F.2d 404, 407 (9th Cir. 1985) ("mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference . . . .").

### A.  Claim Against N. Barreras, M.D.

Plaintiff alleges that Dr. Barreras, as the Chief Medical Officer at Centinela, "has an affirmative duty to administer to Plaintiff's serious medical needs, the omission subjected Plaintiff to extreme pain and suffering." (*See* Compl. 2.)  Nothing else is said or alleged as to Dr. Barreras.  On these facts, the complaint against Dr. Barreras must necessarily fall.

As a prerequisite to any civil rights action under 42 U.S.C. § 1983, a plaintiff must show personal involvement by the defendant in the alleged incidents forming the constitutional injury.  *Milton v. Nelson*, 527 F.2d 1158, 1159 (9th Cir. 1975).  There is no vicarious liability under a theory of respondeat superior in a section 1983 action.  *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 692 (1978); *Palmer v. Sanderson*, 9 F.3d 1433, 1437-38 (9th Cir. 1993).  To succeed on the claim, a plaintiff must allege personal acts by the defendant which have a direct causal connection to the constitutional violations at issue.  *See Sanders v. Kennedy*, 794 F.2d 478, 483 (9th Cir. 1986).

Furthermore, "[a] supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987).  For a supervisor to be liable in his personal capacity, the plaintiff must establish that the supervisor directly participated in the challenged conduct or set in motion a series of acts by others which he knew or had reason to know would cause others to inflict the constitutional injury.  *McRorie v. Shimoda*, 795 F.2d 780, 783 (9th Cir. 1986); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  Supervisor liability must be based on more than merely the right to control employees.

*Monell*, 436 U.S. at 694, n.58.

Here, Plaintiff does not allege any facts suggesting that Dr. Barreras knew him, was ever made aware of his medical condition or complaints, or was in any way involved in any decision relative to the delivery of his medical care for his complaints of kidney stones and kidney related problems. Neither does he allege any facts suggesting anything more than merely a right to control employees under his supervision as Chief Medical Officer, which alone is insufficient to support a claim for supervisory liability under § 1983. *Monell*, 436 U.S. at 694, n.58. Thus, because Plaintiff has not alleged any facts demonstrating that Dr. Barreras directly participated in the alleged constitutional violation about which he complains or set in motion a series of acts by others which he knew or had reason to know would cause others to inflict the constitutional injury, his claim of deliberate indifference as to Dr. Barreras should be dismissed with prejudice.

### B.  <u>Claim Against D. Kahtri, M.D.</u>

The claim as to Dr. Kahtri suffers the same fate. Plaintiff alleges that on April 4, 2006, he was sent to the Central Treatment Center at Centinela, where he was seen for the first time by Dr. Kahtri. As a result of his examination, Dr. Kahtri ordered an appointment with an outside doctor for an intravenous pyelogram (IVP)/urogram to confirm the location of the stones, and also wrote an order for an appointment for a "lithrotripsy, the removal of the stones, if warranted." Thereafter, on May 17, 2006, Dr. Kahtri called the outside urologist's office for an appointment for Plaintiff to have the IVP/urogram performed and an appointment was scheduled for June 23, 2006. On May 26, 2006, the appointment was canceled and Dr. Kahtri ordered a CT of Plaintiff's abdomen and additional blood tests. Afterwards, on June 5, 2006, Dr. Kahtri received and reviewed the results of the tests he had ordered on May 5, 2006, revealing that Plaintiff had abnormal kidney function. Based on Dr. Kahtri's May 7, 2006, orders, arrangements were made for Plaintiff to again be seen at Pioneer Hospital. On or about June 23, 2006, about three weeks later, Dr. Kahtri reviewed the IVP and pyelogram performed on June 12, 2006, confirming that Plaintiff had stones in his right kidney and right pelvic area. Dr. Kahtri also ordered a "retrograde" study in or about June 2006, which showed a "normal

1  anterior and posterior urethra." While Plaintiff thereafter continued to experience pain from
2  kidney stones and other kidney related problems and received treatment for those symptoms
3  through 2007, Dr. Kahtri was not involved in the delivery of Plaintiff's medical care after June
4  2006.  On these facts, Plaintiff cannot establish that Dr. Kahtri either "acted with a culpable state
5  of mind" or purposefully ignored or failed to respond to Plaintiff's pain or medical needs.  Just
6  the opposite in fact.  Accordingly, Plaintiff's deliberate indifference claim against Dr. Kahtri
7  should be dismissed with prejudice.

## CONCLUSION

9  For the foregoing reasons, Defendants N. Barreras and D. Kahtri respectfully
10  request this Court grant the motion to dismiss and dismiss the complaint as to these moving
11  Defendants with prejudice.

12  Dated: July 8, 2008

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

KRISTIN G. HOGUE
Supervising Deputy Attorney General


/s/ David F. Taglienti
DAVID F. TAGLIENTI
Deputy Attorney General

Attorneys for Defendants N. Barreras, M.D., and
D. Kahtri, M.D.

80246177.wpd