UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **NEWBERRY,**<br>　　　　　　　　Plaintiff,<br>v.<br>**BARRERAS ET AL.,**<br>　　　　　　　　Defendants. | CASE NO. 08cv552 L (PCL)<br>**REPORT AND RECOMMENDATION GRANTING DEFENDANTS' MOTION TO DISMISS**<br>[FED. R. CIV. P. 12(b)(6)] |

　　On March 24, 2008, Plaintiff Theodore E. Newberry, a state prisoner proceeding pro se, filed a Complaint under 42 U.S.C. § 1983 alleging an Eighth Amendment claim against Defendants N. Barreras, M.D., and D. Kahtri, M.D., both employees of the California Department of Corrections and Rehabilitation (CDCR). (Doc. 1.) On July 8, 2008, Defendants filed a motion to dismiss Plaintiff's Complaint. (Doc. 9.) Upon review of the Complaint, Defendants' motion, and the responses, the Court recommends that Defendants' motion be GRANTED.

///

///

///

cc: The Honorable Lorenz
　　All Parties and Counsel of Record　　　　　1　　　　　　　　　　　　08cv552

### I. Background

Plaintiff, an inmate currently incarcerated at Centinela State Prison, filed a section 1983 Complaint alleging that the Chief Medical Officer and the Chief Physician at Centinela, N. Barreras and D. Khatri, respectively, subjected him to cruel and unusual punishment in violation of the Eighth Amendment for providing inadequate medical care. (Doc. 1, at 1-2.)

While he was incarcerated at Mule Creek Prison, Plaintiff "developed, complained of, and requested medical attention for recurrent severe side, lower stomach, and/or lower back pain, urinary tract infections ('UTI') and blood in his urine." (Id. at 3.) Staff at Mule Creek allegedly determined that Plaintiff had kidney stones and scheduled to have them removed. (Id.) Before the procedure to remove the stones could be performed, Plaintiff was transferred to Centinela State Prison on February 11, 2005. (Id.) Following his transfer to Centinela, Plaintiff continued to complain about severe side, lower stomach, and back pain, as well as blood in his urine. (Id. at 4.) Plaintiff thereafter was examined on January 24, 2006 at Centinela's medical clinic by Dr. Thorton, who ordered blood and urine tests and referred Plaintiff to an outside urologist. (Id.) After putting in two more requests for medical attention for back and side pain and bloody urine, Plaintiff was examined in February 2006 by another CDCR physician, Dr. Esperanza, who took more x-rays and urine samples for analysis, found that he had two stones, one in his right kidney and one in his urinary tract, and called for an additional evaluation of these findings. (Id. at 4, 20.) On March 6, 2006, Plaintiff was taken to El Centro Regional Medical Center, where he was seen by Dr. Walters, an urologist, who took x-rays and an urine sample and told Plaintiff that he would take care of his kidney stones once he had the test results. (Id. at 4.) On March 17, 2006, Plaintiff was seen by Dr. Barreras, the Chief Medical Officer, who noted that Plaintiff underwent a PMH radiology carotid ultrasound test and that the results would be faxed to the prison. (Id. at 17 (exhibit A).)

On April 4, 2006, Plaintiff was sent to Centinela's main medical treatment facility, where the Chief Physician, Defendant Dr. D. Khatri, examined him and ordered an appointment to be made for Plaintiff to see an outside doctor to perform an intravenous pyelogram (IVP) and, if necessary, a lithrotripsy for removal of the stones. (Id. at 5.) On May 11, 2006, Dr. Abramowitz examined Plaintiff, noted his obstructed right kidney, took an urine sample, recommended an IVP, and ordered

Plaintiff to return in two weeks. (Id.) On May 17, 2006, Defendant Khatri called Dr. Walters to arrange an appointment for Plaintiff to have the IVP done, which was scheduled for June 23, 2006 but was subsequently cancelled. (Id.) Dr. Khatri also ordered a CAT scan of Plaintiff's abdomen and blood tests. (Id.) On June 6, 2006, Plaintiff saw Dr. Abramowitz in Brawley, but the physician noted that the requested IVP had not been done and told Plaintiff that he would be brought back in two weeks for laser lithrotripsy. (Id. at 6.) On June 12, 2006, Dr. Walters performed both the IVP and a retrograde pyelogram on Plaintiff. (Id.) Dr. Khatri allegedly received and reviewed the results that confirmed that Plaintiff had stones in his right kidney and right pelvic area. (Id.) On June 26, 2006, Plaintiff was again taken to see Dr. Abramowitz, but he told him that he was still awaiting the test results and that he would perform the stone removal when he returned from vacation. (Id.) Thereafter, Plaintiff "unprompted and unassisted passed four small stones on his own, each on a different occasion," between the time of his last visit with Dr. Abramowitz on June 26, 2006 and the time of his next visit with a Pioneer Hospital physician, Dr. Cope, on June 13, 2007. (Id.) During that period of time, Plaintiff allegedly "still retained the two large stones and continued to suffer the same kidney related pain and problems, complained of the same problems to [Centinela] medical staff, and was seen by numerous CDCR doctors who continued to reorder more of the same tests Plaintiff had previously taken many times before." (Id.) On Dr. Khatri's and Dr. Barreras' order, Plaintiff was taken to Pioneer Hospital on June 13, 2007, where he was seen by Dr. Cope for "retrograde studies" of Plaintiff's urinary tract. (Id. at 6, 49.) The results showed that Plaintiff had "a normal anterior and posterior urethra." (Id.) On June 19, 2007, Plaintiff was seen by a urologist, Dr. Mosley, who examined him and noted that he passed four small stones two weeks earlier. (Id. at 7.) Dr. Mosely ordered another IVP and other tests and told Plaintiff that if the results warrant lithrotripsy, he would perform it. (Id.) After suffering bad pain, Plaintiff saw a CDCR physician on June 28, 2007 and another one, Dr. Vu, on August 3, 2007, who noted his "chronic kidney stones" and kidney "insufficiency" and ordered more blood and urine tests. (Id.) On October 21, 2007, Dr. Tetteh examined Plaintiff and ordered a nephrology and ultrasound. (Id.) Thereafter, Plaintiff continued to request and see Centinela physicians "on an average of twice each month, if not more, regarding his kidney problems, and has still not been seen by another outside doctor nor has his kidney stones been removed." (Id.)

cc: The Honorable Lorenz
    All Parties and Counsel of Record    3    08cv552

Based on the aforementioned factual scenario, Plaintiff alleges that Defendants Dr. Khatri and Dr. Barreras violated Plaintiff's constitutionally protected right to be free from cruel and unusual punishment for deliberately ignoring Plaintiff's medical needs and pain. (Id. at 8.) Plaintiff alleges that "because Dr. Barreras and Dr. Khatri intentionally overlooked or ignored medical evidence that was before them and take the proper process to relieve Plaintiff of unnecessary pain, Plaintiff is now still experiencing the same extreme pain and suffering he has had to endure for the past over three years." (Id.) Plaintiff asserts that both the Chief Medical Officer and the Chief Physician have "an affirmative duty to administer to Plaintiff's serious medical need." (Id. at 2.)

## II. Standard of Review

FED. R. CIV. P. 12(b) expressly enumerates a list of six defenses that can be asserted in a motion to dismiss, including for "failure to state a claim upon which relief can be granted," FED. R. CIV. P. 12(b)(6). Under 12(b)(6), a complaint may be dismissed for failure to state a cognizable legal theory or for failure to state sufficient facts under a cognizable legal theory. See Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).

In reviewing the sufficiency of a complaint, the court must assume the truth of all factual allegations and construe them in light most favorable to the nonmoving party. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002). The court may consider the facts alleged in the complaint, documents attached to the complaint, documents incorporated by reference in the complaint, and matters of which the court takes judicial notice. U.S. v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). Additionally, the court may hypothesize facts, "consistent with the complaint, that would make out a claim." Graehling v. Village of Lombard, Ill., 58 F.3d 295, 297 (7th Cir. 1995). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987). Furthermore, "[i]f the pleadings establish facts compelling a decision one way, that is as good as if depositions and other expensively obtained evidence on summary judgment establishes the identical facts." Weisbuch v. County of Los Angeles, 119 F.3d 778, 783 n. 1 (9th Cir. 1997).

If a claim is dismissed because the complaint fails to allege essential facts, then leave to amend the complaint should be granted along with the dismissal "unless the district court determines that the

1  pleading could not possibly be cured by the allegation of other facts." <u>Bly-Magee v. California</u>, 236
2  F.3d 1014, 1019 (9th Cir. 2001) (internal quotation marks omitted).

### III. Discussion

Defendants contend that Plaintiff has not alleged any facts suggesting that Dr. Barreras knew him, was ever made aware of his medical condition or complaints, or was in any way involved in any decision relative to the delivery of his medical care for the complaints of kidney stones and kidney-related problems. (Doc. 14, at 2.) Defendants also contend that Plaintiff has not alleged facts suggesting that Dr. Barreras had used his right to control employees under his supervision as Chief Medical Officer in order to subject Plaintiff to inadequate medical care. (<u>Id.</u> at 2-3.) Moreover, Defendants contend that Plaintiff has not alleged facts that Dr. Kahtri either acted with a culpable state of mind or purposefully ignored or failed to respond to Plaintiff's pain or medical needs. (<u>Id.</u> at 3-4.) Finally, Defendants contend that Plaintiff has not alleged facts that Dr. Kahtri directly participated in or set in motion a series of acts by others which he knew or had reason to know would cause others to inflict constitutional injury. (<u>Id.</u> at 4.)

To state a claim under the Eighth Amendment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976). To establish deliberate indifference, an inmate must allege facts to indicate that prison officials acted with a culpable state of mind. <u>Wilson v. Seiter</u>, 501 U.S. 294, 302 (1991). The prison official must have been aware of facts from which an inference of substantial risk of serious harm exists and must actually draw that inference. <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1057 (9th Cir. 2004). "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." <u>Gibson v. County of Washoe, Nevada</u>, 290 F.3d 1175, 1187 (9th Cir. 2002). "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992), <u>overruled on other grounds</u>, <u>WMX Technologies, Inc., v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Mere inadequate treatment due to malpractice, or even gross negligence, does not amount to a constitutional violation. <u>Estelle</u>, 429 U.S. at 106; <u>Wood v. Housewright</u>, 900 F.2d 1332, 1334 (9th Cir. 1990). "A difference of opinion between a prisoner-patient

and prison medical authorities regarding treatment does not give rise to a § 1983 claim." <u>Franklin v. State of Or., State Welfare Division</u>, 662 F.2d 1337, 1344 (9th Cir. 1981). Furthermore, while deliberate indifference may appear when prison officials deny, delay, or intentionally interfere with medical treatment, <u>Hutchinson v. U.S.</u>, 838 F.2d 390, 394 (9th Cir. 1988), "the delay must have caused substantial harm." <u>Wood</u>, 900 F.3d at 1335. In the specific case of kidney stones, allegations that can be construed as a cognizable Eighth Amendment claim include intentionally delaying an appointment with a urologist or intentionally delaying an IVP examination for several months. <u>See</u> <u>Portillo v. Johnson</u>, 94 Fed. Appx. 457, 459 (9th Cir. 2004) (unpublished opinion).

For a supervisor to be liable in his personal capacity, the plaintiff must establish that the supervisor directly participated in the challenged conduct or set in motion a series of acts by others which he knew or had reason to know would cause others to inflict the constitutional injury. <u>Hansen v. Black</u>, 885 F.2d 642, 646 (9th Cir. 1989). "Under section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability." <u>Id.</u> at 645-46.

In this case, regarding Defendant Dr. Barreras, Plaintiff has not stated an Eighth Amendment claim against her. In his Complaint, Plaintiff concludes that Dr. Barreras "intentionally overlooked or ignored medical evidence" and did not "take the proper process to relieve Plaintiff of unnecessary pain." However, Plaintiff does not allege essential facts detailing Dr. Barreras' actions that would support such a conclusion. Plaintiff includes documents explaining that Dr. Barreras approved an ultrasound test that was administered on March 17, 2006. Plaintiff also states that Dr. Barreras ordered Plaintiff to be taken to Pioneer Hospital on June 13, 2007, where he was seen by Dr. Cope for retrograde studies of Plaintiff's urinary tract. The test, performed after Plaintiff passed four small kidney stones on his own, showed that Plaintiff had a normal urethra. But to state an Eighth Amendment claim, Plaintiff would have to allege specific acts or omissions intentionally committed by Dr. Barreras himself that exposed Plaintiff to a substantial risk of serious harm. For example, Plaintiff does not allege that Dr. Barreras intentionally withheld pain medication or a specific treatment from him that caused substantial harm. Moreover, as supervisors are not liable for actions of subordinates on a vicarious liability theory under section 1983, it is not enough to state that Defendant Dr. Barreras had an affirmative duty to administer

to Plaintiff's medical needs in his capacity as Chief Medical Officer. Thus, Defendant Dr. Barreras should be dismissed from Plaintiff's complaint for failure to state a claim.

With regard to Defendant Dr. Kahtri, Plaintiff also has not stated sufficient facts to make a cognizable Eighth Amendment claim against him. Plaintiff alleges that on April 4, 2006, he was seen by Dr. Kahtri, who ordered an appointment with an outside doctor for an IVP to confirm the location of the kidney stones and, if warranted, a lithrotripsy for removal of the stones. Thereafter, on May 17, 2006, Dr. Kahtri called the outside urologist's office for an appointment for Plaintiff to have the IVP performed, which was scheduled for June 23, 2006. On May 26, 2006, the appointment was cancelled, and Dr. Kahtri ordered a CAT scan of Plaintiff's abdomen and blood tests. Afterwards, on June 5, 2006, Dr. Kahtri received and reviewed the results of the tests he had ordered and concluded that he had stones in his right kidney and right pelvic area. On Dr. Kahtri's May 7, 2006 orders, arrangements were made for Plaintiff to be taken to Pioneer Hospital, where he was seen by Dr. Cope for retrograde studies of his urinary tract. The test, performed after Plaintiff passed four small kidney stones on his own, showed that Plaintiff had a normal urethra. While Plaintiff thereafter continued to experience pain from kidney stones and other kidney-related problems, Plaintiff does not allege that Dr. Kahtri was involved in Plaintiff's medical care after June 2006. On these facts, Plaintiff has not described specific acts or omissions intentionally committed by Dr. Kahtri that exposed Plaintiff to a serious risk of substantial harm. For example, Plaintiff never alleges that Dr. Kahtri intentionally delayed a specific form of treatment or withheld pain medication in order to harm Plaintiff's health. Plaintiff merely concludes that Dr. Kahtri intentionally overlooked medical evidence and failed to take the proper process to relieve Plaintiff of unnecessary pain. Plaintiff also cannot rely on a theory of vicarious liability in suing Dr. Kahtri for failing to administer his duty of care in his supervisory capacity. Thus, Defendant Dr. Kahtri should be dismissed from Plaintiff's complaint.

## IV. Conclusion

For the foregoing reasons, the Court RECOMMENDS that Defendants Barreras and Kahtri be dismissed from Plaintiff's Complaint. The Court RECOMMENDS that leave to amend be granted so as to allow Plaintiff the opportunity to state a cognizable claim.

cc: The Honorable Lorenz
All Parties and Counsel of Record

1  IT IS ORDERED that, **no later than December 29, 2008**, Plaintiff may file written objections to
2  this Report and Recommendation and serve a copy on Defendants.  The document should be captioned
3  "Objections to Report and Recommendation."  Any reply to the Objections shall be filed **on or before**
4  **January 5, 2009**.  The parties are advised that failure to file either of these documents within the
5  specified time periods may waive the right to raise objections to the magistrate judge's findings of fact.
6  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).
7  IT IS SO ORDERED.
8  DATED: December 5, 2008

Peter C. Lewis
U.S. Magistrate Judge
United States District Court

cc: The Honorable Lorenz
    All Parties and Counsel of Record                    8                                    08cv552